Filed 5/13/25  P. v. Kauffman CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MITCHELL LEE KAUFFMAN,<br><br>　　Defendant and Appellant. | F087167<br><br>(Super. Ct. No. 15CMS-5566)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kings County.  Robert S. Burns, Judge.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]	Before Hill, P. J., Smith, J. and Meehan, J.

# INTRODUCTION

In 2017, after waiving a preliminary hearing, appellant and defendant Mitchell Lee Kauffman (appellant) pleaded guilty to the second degree murder of one victim (Pen. Code,[1] § 187, subd. (a)), gross vehicular manslaughter while intoxicated that proximately resulted in the killing of a second victim (§ 191.5, subd. (a)), and driving while under the influence of any drug and proximately causing death or great bodily injury to a third victim (Veh. Code, § 25153, former subd. (e)).[2] He was sentenced to seven years eight months plus 15 years to life in prison pursuant to a negotiated disposition.

In 2023, the trial court denied appellant's section 1172.6 petition for resentencing of his murder conviction for failing to state a prima facie case, and found the allegations in the amended information and his plea were consistent with second degree implied malice murder committed while appellant was driving under the influence pursuant to *People v. Watson* (1981) 30 Cal.3d 290, 300–301 (*Watson*).

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and *People v. Wende* (1979) 25 Cal.3d 436.

In response to this court's notice, appellant filed a letter brief requesting reconsideration of his petition, and asserted he was eligible for resentencing because he

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] At the time of the commission of the offenses and filing of the charging documents, former subdivision (e) of Vehicle Code section 23153 prohibited a person from driving under the influence of any drug, concurrently doing an act prohibited by law or neglecting any duty imposed by law, and proximately causing death or great bodily injury. In 2016, Vehicle Code section 23153 was amended, and this provision was redesignated as subdivision (f) without substantive change. (Assembly Bill No. 2687 (2015–2016 Reg. Sess.); Stats. 2016, ch. 765, § 2, eff. Jan. 1, 2017.) We will refer to this offense as a violation of former subdivision (e) for consistency.

2.

did not act with malice or the intent to kill, and his pleas were based on now-invalid theories of imputed malice.

The Supreme Court recently held the trial court may consider the preliminary hearing transcript as part of the record of conviction to make the prima facie finding. (*People v. Patton* (2025) 17 Cal.5th 549 (*Patton*).) In this case, however, appellant waived a preliminary hearing, and the record of conviction consists of the charging documents, the plea colloquy, and the transcripts of the plea and sentencing hearings.

We affirm the trial court's denial of appellant's petition because the record of conviction establishes that he pleaded guilty as the actual killer who was driving while under the influence and proximately caused the deaths of two victims and great bodily injuries suffered by the third victim.

## PROCEDURAL BACKGROUND

On November 5, 2015, a felony complaint was filed in the Superior Court of Kings County charging appellant with committing multiple offenses on or about November 3, 2015, including two counts of murder with malice aforethought of Juan Villegas (Villegas) and Joshua Duncan (Duncan) (§ 187, subd. (a)); two counts of gross vehicular manslaughter while intoxicated proximately resulting in the killings of Villegas and Duncan (§ 191.5, subd. (a)); three counts of unlawfully evading police officers while driving a motor vehicle and causing death to Villegas and Duncan, and serious bodily injury to William J. Marshall IV (Marshall) (Veh. Code, § 2800.3, subd. (a)); one count of driving under the influence of any drug, proximately causing bodily injury and/or death to Villegas, Marshall, and Duncan (Veh. Code, §§ 23153, former subd. (e), 23558) with personal infliction of great bodily injury on the three victims (§ 12022.7, subd. (a)); and additional offenses.

Both appellant and the People waived a preliminary hearing.

3.

**Amended Information**

On February 24, 2017, a first amended information was filed that again charged appellant with committing the following offenses on or about November 3, 2015:

Counts 1 and 2: appellant unlawfully and with malice aforethought murdered, respectively, Villegas and Duncan (§ 187, subd. (a)), and there were no premeditation allegations;

Counts 3 and 4: gross vehicular manslaughter while intoxicated, in that appellant unlawfully and without malice killed, respectively, Villegas and Duncan, while driving a vehicle in violation of Vehicle Code sections 23140, 23152, and 23153, and the killings were the proximate result of the commission of an unlawful act, not amounting to a felony and with gross negligence; and the proximate result of the commission of a lawful act which might have produced death in an unlawful manner, and with gross negligence (§ 191.5, subd. (a));[3]

---

[3] Section 191.5, subdivision (a) states: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence."

Vehicle Code section 23140 prohibits a person under the age of 21 years from driving with a blood-alcohol level of 0.05 percent.

Vehicle Code section 23152 prohibits a person from driving a vehicle under the influence of alcohol (subd. (a)), or with a blood-alcohol level of 0.08 percent (subd. (b)).

Vehicle Code section 23153 prohibits a person from driving a vehicle under the influence of alcohol (subd. (a)), or with a blood-alcohol level of 0.08 percent (subd. (b)) and "concurrently do[ing] any act forbidden by law, or neglect[ing] any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury *to any person other than the driver*." As already noted, former subdivision (e) prohibited a person from driving under the influence of any drug, and concurrently doing any act forbidden by law, or neglecting any duty imposed by law in driving the vehicle, which

4.

Counts 5, 6, and 7:  appellant willfully and unlawfully, while operating a motor vehicle and with intent to evade, fled and otherwise attempted to elude a pursuing peace officer's motor vehicle, while the peace officer's motor vehicle was distinctively marked, sounding its siren, and exhibiting at least one lighted red lamp that appellant saw and reasonably should have seen, and appellant caused serious bodily injury to, respectively, Villegas, Duncan, and Marshall (Veh. Code, § 2800.3, subd. (a));[4]

Count 8:  appellant did unlawfully while under the influence of any drug, drive a vehicle and concurrently do an act prohibited by law or neglect any duty imposed by law, which act or neglect proximately caused injury to any person other than the driver (Veh. Code, § 25153, former subd. (e)); with three special allegations that he proximately caused bodily injury and/or death to multiple victims (Veh. Code, § 23558); and three enhancements for personal infliction of great bodily injury on the three victims. (§ 12022.7, subd. (a));

Count 9:  appellant did unlawfully drive and take a vehicle, a 2001 Chevrolet Silverado that was the personal property of P.H. without the consent of the owner, with the intent to deprive the owner, either permanently or temporarily, of title or possession (Veh. Code, § 10851, subd. (a));

Count 10:  appellant unlawfully bought and received a stolen vehicle, a 2001 Chevrolet Silverado, knowing the property to be stolen, a misdemeanor (§ 496d, subd. (a)); and

Count 11:  appellant unlawfully drove a vehicle without a valid driver's license, a misdemeanor (Veh. Code, § 12500, subd. (a)).

---

act or neglect proximately causes bodily injury to any person "*other than the driver*." (Italics added.)

[4]     Vehicle Code section 2800.1 prohibits a person from fleeing or evading a pursuing peace officer.  Vehicle Code section 2800.3, subdivision (a) prohibits a person from willfully fleeing or attempting to elude a pursuing peace officer in violation of section 2800.1 and proximately causing serious bodily injury to any person.

**Plea Hearing**

Also on February 24, 2017, appellant pleaded guilty to three felony counts in the amended information: count 1, murder with malice of Villegas; count 4, gross vehicular manslaughter of Duncan while intoxicated; and count 8, driving while under the influence and becoming involved in an accident that resulted in death or great bodily injury to a person other than the driver, Marshall, with a great bodily injury enhancement.

As to count 8, the prosecutor stated Marshall was a Navy pilot and "the collision resulted in making him a quadriplegic."

The trial court advised appellant of his constitutional rights, and appellant said he understood and waived those rights. The court also advised appellant of the consequences of his pleas and admissions, and that "[b]ecause of the *DUI offense*, as well as the fact that *the homicide involved the use of a vehicle, your driver's license will be suspended by the Department of Motor Vehicles*, it's actually revoked by the Department of Motor Vehicles for the rest of your life …." Appellant said he understood. (Italics added.)

The trial court advised appellant that also because of the DUI conviction, if he drove in the future "while under the influence, and it happened within [10] years of your sentence on this case, then that could be charged as a felony, regardless of your blood alcohol concentration and the facts, just because it occurred within [10] years of the conviction of the previous felony DUI," and if he drove in the future, he also would be violating Vehicle Code section 14601.2, driving when his license was suspended or revoked, "because you're going to have a lifetime revocation." Appellant said he understood.

The trial court asked if appellant was entering his pleas pursuant to *People v. West* (1970) 3 Cal.3d 595, to take advantage of the plea agreement and obtain dismissal of the

other counts, including the additional charges of murder and felony evasion. Appellant's counsel said yes.[5]

The trial court stated appellant was pleading guilty to charges arising from "a single traffic accident" that resulted in separate victims as alleged in each count, and asked the parties if they were waiving any possible application of section 654 for purposes of imposing the sentence in the negotiated disposition. Both the prosecutor and defense counsel said yes.

The trial court advised appellant that under section 654, "when there's a single act and multiple crimes are committed that you can only be punished one time, you can't be punished on the multiple crimes," but there was an exception if there were multiple victims. The court advised appellant that he could waive application of section 654, and asked if he was doing so in order to take advantage of the plea agreement and avoid facing multiple life terms for the charged offenses in counts 1 and 2, the murders of Villegas and Duncan with malice aforethought. Appellant said yes.

The trial court asked the parties if there had been a preliminary hearing. Both defense counsel and the prosecutor said they had waived it. The court asked if there was a stipulation to a factual basis, and both parties stipulated to a factual basis.

The trial court advised appellant that "the law says before I can accept a plea and move on to sentencing I have to ascertain that there are facts present that would support the charges upon which you're being convicted or that you're pleading to. And they're

---

[5]    A plea pursuant to *West* is a plea of "nolo contendere, not admitting a factual basis for the plea." (*In re Alvernaz* (1992) 2 Cal.4th 924, 932.)  "Such a plea, also referred to as an *Alford* plea, based on *North Carolina. v. Alford* (1970) 400 U.S. 25, 37–38 …, allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence. The absence of an admission of guilt has no effect on the use of the resulting conviction as evidence in other criminal actions." (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.)

7.

saying everybody is agreeing that those facts exist; do you agree with that?" Appellant said yes.

## Sentencing Hearing

On April 4, 2017, the trial court conducted the sentencing hearing and advised the parties there was an error in the calculation of the original negotiated disposition, which was supposed to be nine years eight months plus 15 years to life. The court stated the correct sentence for appellant's pleas should be seven years eight months plus 15 years to life, and asked the parties what they wanted to do. Both the prosecutor and defense counsel agreed to the imposition of the corrected sentence for the negotiated disposition.

The trial court heard a victim impact statement from Joshua Duncan's mother, expressing her grief and wishing she had told him to "get out of that freaking truck" before the crash, that she had forgiven appellant, and her surviving son was angry at "this kid" who made a decision that resulted in Duncan's death. The victim advocate stated it was too difficult for Villegas's family to attend.

The trial court invited argument from the parties. The prosecutor stated: "We negotiated a resolution and I think all things considered, the age, the background of [appellant] in this case, and, quite frankly, while many times it's difficult for people to say anything that's positive with respect to a [d]efendant, I'm not sure what the proper word is for it but [appellant] *should be commended for standing up and accepting his responsibility and accountability for the carnage that he's caused* not only to three families, two decedents family [*sic*] and a family of an individual who is rendered a quadriplegic, but within his own family, not only himself." (Italics added.) Defense counsel submitted the matter.

The trial court sentenced appellant to the aggregate term of seven years eight months plus 15 years to life, based on six years for count 4, gross vehicular manslaughter of Duncan while intoxicated; a consecutive term of eight months (one-third the midterm) for count 8, driving under the influence and doing an act that proximately

caused death or great bodily injury to Marshall, plus one year for the attached great bodily injury enhancement; and 15 years to life for count 1, second degree murder of Villegas.

## SECTION 1172.6 PETITION FOR RESENTENCING

On April 14, 2023, appellant filed, in propria persona, a petition for resentencing of his second degree murder conviction pursuant to section 1172.6, and requested appointment of counsel.[6]

### Appellant's Supporting Declaration

In support of his petition, appellant filed a declaration that consisted of a preprinted form where he checked boxes asserting (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or

---

[6] In or about January 2020, appellant filed a first petition for resentencing pursuant to former section 1170.95, which initially created the procedural mechanism for petitioners to seek resentencing if convicted of felony murder or murder under the natural and probable consequences doctrine after the amendments to sections 188 and 189. (See, e.g., *People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*).) The trial court summarily denied appellant's petition without appointing counsel.

After the trial court denied appellant's first petition, the Supreme Court held in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), that the trial court must appoint counsel upon the filing of a facially valid petition before it could make the prima facie determination. (*Id*. at p. 957.)

Thereafter, former section 1170.95 was amended to codify certain aspects of *Lewis* and address other points, and the statute was later renumbered as section 1172.6 without further substantive change. (*Patton*, *supra*, 17 Cal.5th at pp. 558–559; *Curiel*, *supra*, 15 Cal.5th at p. 449.) Appellant's second petition was not procedurally barred given the changes in the law. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 949–950.)

manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

**Appellant's Supporting "Points of Law"**

In addition to the preprinted declaration, appellant also filed, in propria persona, a separately-typed supporting document entitled "Points of Law," which raised specific arguments about the charges filed against him, his pleas, and why he was eligible for resentencing under section 1172.6.

Appellant argued that he was only charged with generic murder with malice, which would have permitted the prosecution to proceed against him on either felony murder or the natural and probable consequences doctrine if the case went to trial.

Appellant argued his plea for second degree murder with malice aforethought included implied malice, defined as " 'when a person willfully does an act, the natural and probable consequences of which are dangerous to human life' " and, as a result of that definition, his murder conviction was also based on the now-invalid theories of imputed malice and the natural and probable consequences doctrine.

Next, appellant argued the prosecution could have proceeded under the felony-murder rule if he went to trial because the amended information alleged that "[he] committed a homicide during the perpetration of … Vehicle Code Sections 23153[, former subdivision] (e) and 2800.2[, subdivision] (a), a felony inherently dangerous to human life." Appellant asserted "the prosecutor argued consistently with a theory of felony murder with a predicate offense that prohibits driving … in willful disregard for the safety of others …."

In support of his felony-murder claim, appellant quoted the prosecutor as allegedly arguing about his case: " '[Appellant was] driving recklessly without regard for the safety of the motoring public .… The suspect vehicle ran the stop sign at approx[imately]

100 mph and collided into the right side of a westbound 2011 BMW and then into [Villegas] an eastbound 2015 GMC pic[k]up.' "[7]

Appellant also argued that his plea in count 4 to gross vehicular manslaughter while intoxicated was based on "the same underlying evidence for which [he] pled guilty to 2nd Degree Murder in Count 1." "Thus, it was a single act for both convictions. A single act that resulted in the death of both victims. The factual basis for the conviction in Count 4 proves as a matter of law and fact that the crime was committed without actual malice."

---

[7] In making these claims about the prosecutor's alleged reliance on the felony-murder rule, appellant quoted documents that he attached in support of his "Points of Law." These documentary exhibits consist of three pages from the People's opposition to appellant's *first* petition for resentencing, and apparently quote from a law enforcement report.

These documents state that on November 3, 2015, officers attempted to perform a traffic stop on a stolen vehicle; the vehicle failed to pull over; a high speed chase ensued in which the stolen vehicle recklessly evaded the police; the stolen vehicle went through a stop sign and crashed into two other vehicles; appellant was the driver of the stolen vehicle and found trapped behind the steering wheel; Duncan was a passenger in the stolen vehicle and pronounced dead at the scene; the stolen vehicle crashed into a GMC pickup, and Villegas was the driver and also pronounced dead at the scene; and the stolen vehicle also crashed into a BMW, and Marshall was the driver and suffered major life-threatening injuries.

Appellant relied on these statements from the People's opposition to his first petition for resentencing to assert the prosecution was going to rely on the felony-murder rule if he had been tried for murder, such that his section 1172.6 petition stated a prima facie case for resentencing.

While appellant apparently relied on law enforcement reports to make this claim, he did not stipulate to these reports as the factual basis for his pleas. (See, e.g., *People v. Rivera* (2021) 62 Cal.App.5th 217, 234–235, disapproved on other grounds in *Lewis*, *supra*, 11 Cal.5th 952.) In any event, police reports are generally not part of the record of conviction and consist of multiple levels of hearsay (*People v. Sanchez* (2016) 63 Cal.4th 665, 674–675, 695, & fn. 21; *Moles v. Gourley* (2003) 112 Cal.App.4th 1049, 1060; *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1521), and the trial court did not rely on these documents in ruling on appellant's section 1172.6 petition.

Appellant claimed that when he stipulated to a factual basis for his pleas, he did not make any admissions or confessions.  When he entered his plea to count 4, "everybody agree[d] that the crime that killed both victims [Villegas & Duncan] was committed without actual malice" because he admitted "that [he] did, <u>without malice</u>, kill [Duncan] … <u>while driving a vehicle in violation of Vehicle Code Section[s] 23152 and 23153</u> .…"  (Original underscoring.)

Appellant argued that count 1, second degree murder, should be reduced to the same offense as count 4, gross vehicular manslaughter, because if there had been a trial, the jury "would have been solely in charge of determining [the] single question of whether or not [he] harbored malice because both victims died upon the collision."  In making these arguments, appellant identified Duncan as his "co-defendant" and asserted he did not intend to kill Duncan.

The trial court appointed counsel and placed appellant's petition on calendar.

**The People's Opposition**

The People filed opposition and argued appellant was ineligible for resentencing under section 1172.6 because the record of conviction rebutted the petition's allegations that he was convicted under an invalid theory of imputed malice.  The People asserted the record showed he was charged and pleaded guilty to implied malice murder, he proximately caused the victims' deaths by driving under the influence, and this theory was not repealed by the amendments to sections 188 and 189.

**Appellant's Reply**

Appellant's appointed counsel filed a reply to the People's opposition, and argued his petition stated a prima facie case for resentencing because there was no preliminary hearing or trial, appellant entered his pleas pursuant to *West*, he pleaded guilty to take advantage of a plea agreement without making any admissions, and he did not make any concessions or admissions about the underlying factual basis at the plea hearing.

12.

## THE SECTION 1172.6 HEARING

On November 7, 2023, the trial court held a hearing on whether appellant's section 1172.6 petition stated a prima facie case for resentencing.

The trial court acknowledged the amendments to sections 188 and 189 eliminated imputed malice and felony murder as theories to convict a defendant of murder. However, the court stated the amendments did not eliminate implied malice second degree murder, and an actual killer was ineligible for resentencing.

The trial court stated that based on the pleadings, it could not identify a theory where appellant could have been prosecuted under the now-invalid imputed malice theories of the felony-murder rule, or the natural and probable consequences doctrine for a murder committed by an accomplice, that would entitle him to relief under section 1172.6.

The court further stated: "It appears to me he can only be prosecuted for being the actual killer, in which case implied malice would become the theory as opposed to imputed." "[I]nstead it appears to me to be implied malice under the old *Watson* theory, which is still valid law for driving under the influence, and then that causing death, which appears to me to be how the case was prosecuted."[8]

The trial court asked appellant's counsel if she could identify a target felony that would have allowed appellant to be prosecuted pursuant to the now-invalid imputed malice theory under the felony-murder rule. Counsel said no.

The trial court asked appellant's counsel if she could identify "any target offense from which [appellant] was willingly participating, but led to another individual during the commission of that target offense committing the homicide," which would have allowed appellant to be prosecuted for murder under the natural and probable

---

[8] As will be discussed below, a defendant may be convicted of second degree implied malice murder if he or she was driving a vehicle while under the influence and proximately caused a fatal traffic collision. (*Watson, supra*, 30 Cal.3d at pp. 300–301.)

13.

consequences doctrine. Appellant's counsel replied that she "[did] not disagree with the Court's interpretation, and [could] not identify that ...."

**The Trial Court's Ruling**

The trial court denied appellant's petition and found that based on the pleadings, his petition failed to state a prima facie case for resentencing because "it does not appear to me that there are any facts that would have allowed the prosecution or the People to prosecute him under a theory that is no longer legally valid after the amendments to ... Section 188 or 189."

On November 13, 2023, appellant filed a timely notice of appeal.

**DISCUSSION**

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief also included counsel's declaration that appellant was advised he could file his own brief, and this court advised appellant that he could file a supplemental letter brief. On July 23, 2024, appellant filed a letter brief and requested this court reconsider his section 1172.6 petition for resentencing, and reasserted arguments raised in his "Points of Law," that his murder conviction was based on imputed malice theories that are now invalid.

We will review the murder and malice law, the amendments enacted by Senate Bill No. 1473 (2017–2018 Reg. Sess) (Senate Bill 1473) and Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), the provisions of section 1172.6, and *Watson* implied malice murder, and affirm the trial court's denial of his petition for failing to state a prima facie case.

**I.  Murder and Malice**

" 'Murder is the unlawful killing of a human being ... with malice aforethought.' [Citation.]  When a person commits a murder without premeditation and deliberation, it is of the second degree." (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 681 (*Wolfe*).)

14.

"Second degree murder is defined as requiring either express or implied malice. [Citations.] Express malice is intent to kill." (*People v. Carr* (2023) 90 Cal.App.5th 136, 141 (*Carr*).) "Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger." (*People v. Elmore* (2014) 59 Cal.4th 121, 133; *Carr*, at p. 141.)

When appellant was charged and pleaded guilty in this case, there were at least two ways a person could be found guilty of murder based on imputed malice: the felony-murder rule and the natural and probable consequences doctrine. (*Carr*, *supra*, 90 Cal.App.5th at p. 141.)

" 'Under the felony-murder doctrine, when the defendant or an accomplice kills someone during the commission, or attempted commission, of an inherently dangerous felony, the defendant is liable for either first or second degree murder, depending on the felony committed.… Felony-murder liability [did] not require an intent to kill, or even implied malice, but merely an intent to commit the underlying felony. [Citation.]' " (*People v. Bryant* (2013) 56 Cal.4th 959, 965.) " ' "The felony-murder rule imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to human life." ' " (*People v. Baker* (2021) 10 Cal.5th 1044, 1104–1105.)

"[U]nder the natural and probable consequences doctrine, '[a]n aider and abettor [wa]s guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commits (the nontarget crime) that is a natural and probable consequence of the target crime. [Citations.] "Thus, for example, if a person aid[ed] and abet[ted] only an intended assault, but a murder result[ed], that person [could] be guilty of that murder, even if unintended, if it [wa]s a natural and probable consequence of the intended assault." [Citation.]' [Citation.] In sum, 'malice could be

imputed to an aider and abettor under the natural and probable consequences doctrine.' " (*Carr*, *supra*, 90 Cal.App.5th at pp. 141–142.)

## II.  Senate Bill Nos. 1437 and 775

"In 2018, the Legislature amended the law of homicide, eliminating several theories of liability based on imputed malice."  (*Patton*, *supra*, 17 Cal.5th at p. 556.)

"Effective January 1, 2019, Senate Bill … 1437 … significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions.  [Citations.]  First, Senate Bill … 1437 amended section 189 so that '[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were "major participant[s] in the underlying felony and acted with reckless indifference to human life." '  [Citations.]  Second, it amended section 188 to provide that, when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where she acted 'with malice aforethought,' and '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' "  (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 122 (*Guiffreda*).)

"As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime."  (*Patton*, *supra*, 17 Cal.5th at p. 558.)

## III.  Section 1172.6

Senate Bill 1437 also added former section 1170.95, which created a procedural mechanism for those convicted under the former law to seek retroactive relief by filing a petition for resentencing.  (*People v. Reyes* (2023) 97 Cal.App.5th 292, 295.)  As previously noted, these provisions were further amended by Senate Bill 775, effective January 1, 2022, and the statute was later renumbered as section 1172.6 without further substantive change.  (*Patton*, *supra*, 17 Cal.5th at pp. 558, 562; *Curiel*, *supra*, 15 Cal.5th at p. 449; *Guiffreda*, *supra*, 87 Cal.App.5th at p. 123.)

16.

A petitioner seeking relief under section 1172.6 must file a facially valid petition that states the statutory requirements for relief, after which the court must appoint counsel and provide an opportunity for briefing. (*Patton*, *supra*, 17 Cal.5th at p. 562.)

After counsel is appointed, the trial court must evaluate the petition to determine whether the petitioner has made a prima facie case for resentencing. If the defendant makes a prima facie showing, the court must issue an order to show cause and conduct an evidentiary hearing to determine whether relief should be granted. (*Guiffreda*, *supra*, 87 Cal.App.5th at p. 122; *People v. Reyes*, *supra*, 97 Cal.App.5th at p. 298.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner" ' " and denying the petition for failing to state a prima facie case for relief. (*Id.* at p. 971.)

When the conviction results from a guilty plea rather than a trial, the record of conviction includes the charging documents and the information; "unchallenged, relief-foreclosing facts" from a preliminary hearing transcript; the plea form or factual basis documentation for a negotiated plea; the plea colloquy; the transcripts for the change of plea and sentencing hearings; and the abstract of judgment. (*Patton*, *supra*, 17 Cal.5th at p. 564; *People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211–1212; *People v.*

17.

*Fisher* (2023) 95 Cal.App.5th 1022, 1029; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329–330, overruled on other grounds by *Lewis*, *supra*, 11 Cal.5th at pp. 961–963; *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350.)

"[P]etitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Patton*, *supra*, 17 Cal.5th at p. 567.) "[A] section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing. Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not ' "factfinding involving the weighing of evidence or the exercise of discretion." ' [Citations.] Indeed, denial of a resentencing petition because its conclusory allegations do not counter the facts in a record of conviction that forecloses relief is a determination that the petition's allegations are legally deficient, 'not a ruling on the merits of the issues which petitioner has attempted to raise.' " (*Id.* at pp. 565–566.)

If the record of conviction conclusively establishes the petitioner was the actual perpetrator or actual killer, the petition fails to state a prima facie case for relief and the petitioner is ineligible for resentencing as a matter of law. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 232–233; *Patton*, *supra*, 17 Cal.5th at pp. 560–561; *Curiel*, *supra*, 15 Cal.5th at p. 448; *People v. Strong* (2022) 13 Cal.5th 698, 710; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 893; *People v. Garcia* (2022) 82 Cal.App.5th 956, 973.)

The trial court's denial of a section 1172.6 petition for failing to state a prima facie case is subject to de novo review. (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865; *People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

## IV.  Implied Malice Murder and *Watson*

At the section 1172.6 hearing, the trial court stated that the allegations in the amended information and appellant's pleas were consistent with implied malice murder pursuant to *Watson*, *supra*, 30 Cal.3d 290.

"At least since 1981, when our Supreme Court [in *Watson*] affirmed a conviction of second degree murder arising out of a high speed, head-on automobile collision by a drunken driver that left two dead, California has followed the rule in vehicular homicide cases that 'when the conduct in question can be characterized as a wanton disregard for life, and the facts demonstrate a subjective awareness of the risk created, malice may be implied .…'  [Citation.]  In such circumstances, 'a murder charge is appropriate.'  [Citation.]  So-called implied malice second degree murder, the *Watson* court explained, is committed 'when a person does " ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" ' .…"  [Citations.]  Phrased in a different way, malice may be implied when [a] defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life.'  [Citation.]  '[A] finding of implied malice' … 'depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard.' "  (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 109–110, citing *Watson*, *supra*, 30 Cal.3d at pp. 298–300.)

*Watson* thus held that malice may be implied for second degree murder when a person willfully drives under the influence of alcohol and proximately causes a homicide. (*Watson*, *supra*, 30 Cal.3d. at pp. 300–301; *People v. Superior Court (Chagolla)* (2024) 102 Cal.App.5th 499, 511–512; *Carr*, *supra*, 90 Cal.App.5th at pp. 143–144; *People v. Roldan* (2020) 56 Cal.App.5th 997, 1004, overruled on other grounds to the extent it is inconsistent with *Lewis*, *supra*, 11 Cal.5th at p. 970; *Wolfe*, *supra*, 20 Cal.App.5th at pp. 681–683; *People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358–1359.)

19.

"Implied malice murder involving drunk driving is now 'colloquially known as a *Watson* murder.' " (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 785, fn. 2; *Wolfe*, *supra*, 20 Cal.App.5th at p. 677.) "After *Watson*, appellate courts have upheld numerous murder convictions in cases where defendants have committed homicides while driving under the influence of alcohol." (*People v. Superior Court (Chagolla)*, *supra*, 102 Cal.App.5th at pp. 512–513, and cases cited therein.)

The amendments enacted by Senate Bill Nos. 1473 and 775 did not eliminate second degree murder based on *Watson* and implied malice. (*Carr*, *supra*, 90 Cal.App.5th at pp. 143–144; *People v. Roldan*, *supra*, 56 Cal.App.5th at pp. 1004–1005.) A defendant who drives while intoxicated and proximately causes a homicide may still be convicted of second degree murder based on implied malice, and is the "actual killer" and ineligible for resentencing under section 1172.6 as a matter of law. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 232–233.)

## V. Appellant Was the Actual Killer

The trial court properly denied appellant's petition for failing to state a prima facie case for relief because the record of conviction conclusively establishes he was charged and pleaded guilty to second degree implied malice murder as the actual killer under the *Watson* theory. Since appellant waived a preliminary hearing, we must examine the record of conviction that consists of the pleadings, the plea colloquy, and the plea and sentencing hearings.

## A. The Charging Allegations

The amended information alleged appellant committed all the charged offenses on November 3, 2015, and these allegations identify the parties and their roles in this case.

As set forth above, counts 1 and 2 alleged appellant committed the murders with malice of Villegas and Duncan in violation of section 187, subdivision (a), with enhancements that in the commission of the offenses appellant personally inflicted great bodily injury on Marshall, "not an accomplice." (§ 12022.7.) There were no

premeditation allegations so the charged offenses were for two counts of second degree murder.

In counts 3 and 4, appellant was charged with two violations of section 191.5, subdivision (a), which prohibits gross vehicular manslaughter while intoxicated "*in the driving of a vehicle*," where the driving was in violation of Vehicle Code section 23140, 23152, or 23153, and the proximate result was a death. (Italics added.) The amended information alleged that appellant committed gross vehicular manslaughter while intoxicated of Villegas and Duncan, while driving a vehicle in violation of Vehicle Code sections 23140, 23152, *and* 23153, which prohibit driving under the influence. (Italics added.) Vehicle Code section 23153 specifically prohibits a person from driving a vehicle under the influence of alcohol (subd. (a)), or with a blood-alcohol level of 0.08 percent (subd. (b)), or under the influence of any drug (former subd. (e)), and "concurrently do[ing] any act forbidden by law, or neglect[ing] any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury *to any person other than the driver*" (italics added). Both counts included separate allegations that in the commission of the offenses, appellant personally inflicted great bodily injury on Marshall, "*not an accomplice*" (italics added). (§ 12022.7.)

In counts 5, 6, and 7, appellant was charged with violating Vehicle Code section 2800.3, subdivision (a), which prohibits a person, who was "*driving the pursued vehicle*," from willfully fleeing or attempting to elude a pursuing peace officer and proximately causing serious bodily injury to any person. (Italics added.) The amended information specifically alleged that appellant willfully and unlawfully, while operating a motor vehicle and with intent to evade, fled and otherwise attempted to elude a pursuing peace officer and caused serious bodily injury to Villegas, Duncan, and Marshall.

In count 8, appellant was charged with violating former subdivision (e) of Vehicle Code section 23153 (redesignated without change as subdivision (f)), which states it is unlawful for a person, while under the influence, "*to drive a vehicle* and concurrently do

any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person *other than the driver*." (Italics added) The amended information alleged appellant unlawfully, while under the influence, drove a vehicle and concurrently did any act forbidden by law, or neglected any duty imposed by law "*in driving the vehicle*, which act or neglect proximately cause[d] bodily injury to any person *other than the driver*." (Italics added.)

Also as to count 8, the amended information charged three allegations as to each victim pursuant to Vehicle Code section 23558, which provides for an enhancement when a person proximately caused bodily injury or death to more than one victim "*in any one instance of driving*" in violation of Vehicle Code section 23153 or section 191.5, and also alleged a great bodily injury enhancement as to Marshall (§ 12022.7). (Italics added.)

As to the remaining charges, count 9 alleged appellant violated Vehicle Code section 10851, subdivision (a), that he did unlawfully take or drive a 2001 Chevrolet without the owner's consent, and with the intent to deprive the owner of title or possession, either permanently or temporarily; and count 10 alleged he violated section 496d, subdivision (a), that he unlawfully bought and received a stolen vehicle, the 2001 Chevrolet, knowing it was stolen. Finally, count 11 alleged appellant violated Vehicle Code section 12500, subdivision (a), that he unlawfully drove a vehicle without a valid driver's license.

## B. The Plea Hearing

At the plea hearing, appellant pleaded guilty to count 1, murder with malice of Villegas; as noted, there was no premeditation allegation, so his plea was to second degree murder.

In count 4, he pleaded guilty to gross vehicular manslaughter of Duncan in violation of section 191.5, subdivision (a), "*while driving a vehicle* in violation of Vehicle Code Section[s] 23152 *and* 23153." (Italics added.) As explained above, Vehicle Code

22.

section 23153 prohibits a person from driving a vehicle under the influence and "concurrently do[ing] any act forbidden by law, or neglect[ing] any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury *to any person other than the driver*."  (Italics added.)

In count 8, appellant pleaded guilty to a felony violation of former subdivision (e) of Vehicle Code section 23153, that he was "*driving a vehicle* while under the influence and … became involved in an accident which resulted in death or great bodily injury to *another person*," Marshall.  (Italics added.)  In his plea, appellant admitted the attached enhancement that in the commission of the offense, he personally inflicted great bodily injury on Marshall, a person other than an accomplice (§ 12022.7, subd. (a)).

In advising appellant of the consequences of his plea, the trial court stated that "[b]ecause of *the DUI offense*, as well as the fact that *the homicide involved the use of a vehicle*, your driver's license will be suspended by the Department of Motor Vehicles, it's actually revoked by the Department of Motor Vehicles for the rest of your life," and if he drove under the influence within 10 years of his sentence, he would be charged with a felony for driving with a lifetime revocation.  Appellant said he understood.  (Italics added.)

The trial court advised appellant that under section 654, "when there's a single act and multiple crimes are committed that you can only be punished one time, you can't be punished on the multiple crimes," but there was an exception if there were multiple victims.  The court advised appellant that he could waive application of section 654, and asked if he was doing so in order to take advantage of the plea agreement and avoid facing multiple life terms for the charged offenses in counts 1 and 2 for committing the murders of Villegas and Duncan with malice aforethought.  Appellant said yes.

## C.  Analysis

The record of conviction conclusively establishes that appellant was charged and entered his pleas as the actual killer under *Watson*'s theory of second degree implied

malice murder. The amended information did not charge any codefendants, it did not allege there were any accomplices in appellant's commission of the offenses, and it specifically alleged Villegas, Duncan, and Marshall were not driving the vehicle. Instead, the allegations in the amended information asserted appellant was the actual driver, he drove a stolen vehicle while under the influence and without a valid driver's license, he attempted to evade a distinctively marked law enforcement vehicle, and proximately caused the deaths of Villegas and Duncan, which were alternatively charged as both murder and gross vehicular manslaughter while intoxicated, and he also proximately caused the great bodily injury of Marshall.

As a result of the pleadings, both murder charges were second degree implied malice murder under *Watson*. Appellant's pleas to second degree murder of Villegas, gross vehicular manslaughter of Duncan while driving a vehicle under the influence, and driving under the influence and proximately causing great bodily injury to Marshall, were also consistent with *Watson*—that he was driving under the influence and caused two homicides and serious bodily injury to a third person. While appellant stipulated to a factual basis under *West*, he pleaded to statutory violations and allegations in the amended information that he committed the three offenses while driving a vehicle and under the influence, and appellant admitted the trial court's advisements of the consequences of his pleas, namely that his driver's license was going to be suspended for the rest of his life because of the offenses he committed—namely "the DUI offense, as well as the fact that the homicide involved the use of a vehicle .…" Appellant also acknowledged that he was waiving any objections pursuant to section 654, because he committed a single act that resulted in multiple crimes and multiple victims.

These conclusions are supported by the sentencing hearing, where the prosecutor stated, without objection, that appellant had accepted "responsibility and accountability *for the carnage that he's caused* not only to three families, two decedents family [*sic*] and

24.

a family of an individual who is rendered a quadriplegic, but within his own family, not only himself." (Italics added.)

When there is no evidence of an accomplice or alternate perpetrator in the record of conviction for the prima facie determination, the trial court may determine the petitioner is the actual killer and ineligible for relief as a matter of law. (See, e.g., *Delgadillo*, *supra*, 14 Cal.5th at p. 233.) In contrast, where there is evidence of an accomplice who might have been the direct perpetrator, an evidentiary hearing is typically necessary for the trial court to weigh the evidence and determine whether the petitioner was the actual killer. (*Patton*, *supra*, 17 Cal.5th at p. 560, fn. 4.)

In this case, the record of conviction conclusively establishes that appellant was driving a vehicle while intoxicated and proximately caused the deaths and injuries. He was charged and convicted as the "actual killer" under *Watson*'s implied malice theory of second degree murder that remains valid after the amendments to sections 188 and 189, and he is ineligible for resentencing as a matter of law.

## VI. Appellant's Arguments

Appellant raises several contentions in his letter brief on appeal, which refer back to the arguments he raised in his "Points of Law" filed in support of his petition, and asserts his petition states a prima facie case that his murder conviction was based on now-invalid theories of imputed malice. His arguments lack merit.

### A. Generic Murder Allegation

Appellant argues his petition stated a prima facie case because he pleaded guilty to a generic charge of murder without any specificity, as alleged in the amended information, and that would have permitted the prosecution to try him based on imputed malice theories of felony murder or natural and probable consequences.

Appellant is correct that " 'an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed.' [Citation.] Nor does an accusatory pleading need to 'specify the theory of murder on which the prosecution

relies at trial.' [Citation.] 'Specifically, neither felony murder nor murder under the natural and probable consequences doctrine need be separately pleaded.' " (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338.) In addition, a defendant's plea to such a murder allegation does not admit any specific theory of murder or "any particular type of malice." (*Ibid*.)

As noted by the trial court, however, the charges alleged against appellant in the amended information, and the pleas that he subsequently entered, are consistent with *Watson*'s theory of second degree implied malice murder committed when he was driving under the influence. The amended information did not allege that appellant had an accomplice who could have been driving, and the nature of the charges excluded the possibility that any of the three victims were accomplices or the actual driver who caused the collision and were responsible for the deaths and injuries. Instead, the record of conviction and appellant's pleas establish that he was the person who was driving under the influence and proximately caused the homicides, and thus the actual killer who was ineligible for resentencing. (See, e.g., *Patton*, *supra*, 17 Cal.5th at p. 560, fn. 4; *People v. Estrada*, *supra*, 101 Cal.App.5th at p. 339.)

## B. Implied Malice is Not Imputed Malice

Next, appellant argues his plea to second degree murder was based upon implied *and* imputed malice. Appellant cites the definition of implied malice as " 'when a person willfully does an act, the natural and probable consequences of which are dangerous to human life' " and, as a result of that definition, his murder conviction was also based on the now-invalid theories of imputed malice and the natural and probable consequences doctrine. Although the definitions of implied malice and the natural and probable consequences doctrine include similar language, they are distinctly different concepts.

Appellant correctly notes that "[m]alice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses."

(*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.)  However, a murder prosecution based on the now-invalid theory of imputed malice and the former natural and probable consequences doctrine necessarily required a second participant, and did not apply to a sole perpetrator.  (*People v. Prettyman* (1996) 14 Cal.4th 248, 260; *People v. Love* (2025) 107 Cal.App.5th 1280, 1288.)  There is "no imputation of malice" for second degree murder based on implied malice, and implied malice murder was not eliminated by the amendments enacted by Senate Bill Nos. 1473 and 775.  (*People v. Vizcarra* (2022) 84 Cal.App.5th 377, 391; *People v. Schell* (2022) 84 Cal.App.5th 437, 444.)

In *Carr*, *supra*, 90 Cal.App.5th 136, the defendant was convicted of second degree implied malice murder under *Watson*.  In his section 1172.6 petition, the defendant asserted he was eligible for resentencing because *Watson*'s theory of implied malice was based upon imputed malice and the natural and probable consequences doctrine, and cited the similarities between the definitional terms.  *Carr* rejected this argument: "Implied malice is not imputed malice.  It requires that the perpetrator actually and personally harbor malice.  *Watson* stands for the proposition that implied malice may be inferred from a defendant's conduct before, during, and after driving drunk—not imputed from the bare fact of driving drunk.  [The defendant's] contrary argument is an artificial concoction that takes the words 'natural consequences' and/or 'natural and probable consequences' out of their proper legal contexts and dumps them all together into a confused semantic stew." (*Carr*, at p. 139.)

"[W]hile the words 'natural' and 'consequences' overlap, the rest of the two formulations are completely different.  '[T]he use of the term "natural consequences" in the … definition of implied malice does not import into the crime of murder the case law relating to the distinct "natural and probable consequences" doctrine developed in the context of aiding and abetting liability.' " (*Carr*, *supra*, 90 Cal.App.5th at p. 144.)  "[A] *Watson* theory does not involve the *imputation* of malice.  It requires proof—in addition

27.

to the mere fact that the defendant killed someone while driving while intoxicated—that the defendant *personally harbored* implied malice." (*Ibid.*)

*Carr* further explained: "The natural and probable consequences doctrine is a theory of liability for aiding and abetting. It made an aider and abettor guilty of a murder committed by the perpetrator, even if the aider and abettor lacked malice, as long as (1) the aider and abettor intended to commit the target crime, and (2) murder was a natural and probable consequence of the target crime. *A Watson murder, by contrast, does not normally involve aiding and abetting. In fact, it is hard to imagine how it could. Rather, Watson requires that the defendant—the person who kills unintentionally while driving drunk—act with implied malice.*" (*Carr*, *supra*, 90 Cal.App.5th at p. 143, italics added.)

*Carr* concluded " 'Senate Bill … 1437 did nothing to remove implied malice as a basis for a second degree murder conviction …' 'and the definition of implied malice remains unchanged. [Citation.]' " (*Carr*, *supra*, 90 Cal.App.5th at p. 144.)

## C.  Second Degree Murder and Gross Vehicular Manslaughter

Appellant argues his pleas to count 1, second degree murder of Villegas, and count 4, gross vehicular manslaughter while intoxicated of Duncan, were based on a "single act" that resulted in the death of both victims at the same time and date. Appellant further argues that when he stipulated to a factual basis for his pleas, he did not make any admissions or confessions but "everybody agree[d] that the crime that killed both victims [Villegas & Duncan] was committed without actual malice" and, as a result, his murder conviction must be reduced to gross vehicular manslaughter while intoxicated.

In making these arguments, however, appellant fails to acknowledge what his counsel conceded at the section 1172.6 hearing, as conclusively established in the charging allegations and his plea—that he was charged and pleaded guilty to implied malice murder under *Watson*, as the actual perpetrator who was driving while intoxicated

28.

and proximately caused two homicides and inflicted great bodily injury to a third victim, and was ineligible for resentencing as a matter of law.

In addition, drunk driving resulting in a fatality may be prosecuted as vehicular manslaughter while intoxicated (§ 191.5, subd. (b)), gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), and murder with implied malice (§§ 187, subd. (a), 191.5, subd. (e)). (*Watson*, *supra*, 30 Cal.3d at pp. 296, 300; *People v. Bennett* (1991) 54 Cal.3d 1032, 1035–1036.) Section 191.5 defines the vehicular manslaughter offenses, and expressly states that the statute does not prohibit or preclude a charge of murder "upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice consistent with the holding of the California Supreme Court in … *Watson*, 30 Cal.3d 290." (§ 191.5, subd. (e); *People v. Munoz* (2019) 31 Cal.App.5th 143, 153.)

Section 191.5, subdivision (e) thus "indicates the Legislature's understanding that vehicular manslaughter and murder are separate offenses, which might, in some circumstances, *encompass the same conduct*." (*People v. Barooshian* (2024) 101 Cal.App.5th 461, 473, italics added.)

As appellant acknowledged at the plea hearing, he entered his pleas to the murder of Villegas, gross vehicular manslaughter while intoxicated of Duncan, and driving while intoxicated and causing injury to Marshall, pursuant to *West* in order to avoid convictions for the more serious offenses alleged in the amended information—the murder of Duncan, and three counts of willfully operating a motor vehicle and attempting to elude a pursuing peace officer and causing serious bodily injury to the three victims.

To the extent appellant argues that he was improperly subject to multiple punishment under section 654 for a single act committed at the same time, "[m]ultiple punishment is proper when a single act of violence, including drunk driving, injures or kills multiple victims." (*People v. Murray* (1990) 225 Cal.App.3d 734, 749.) If appellant went to trial and was convicted as charged of two counts of second degree murder, the

trial court could have imposed consecutive life terms under the multiple victim exception. Moreover, at the plea hearing, appellant personally waived any section 654 objections to his consecutive sentences for murder and gross vehicular manslaughter because he was entering his plea to avoid multiple life sentences for the two charged counts of murder. (*People v. Hester* (2000) 22 Cal.4th 290, 296; Cal. Rules of Court, rule 4.412.)

## D.  Mental State

Appellant asserts his petition should have been granted because the prosecution offered the plea bargain since the facts did not demonstrate that he "harbored a subjective awareness of a higher degree of risk or that he actually appreciated the risks involved," and also because "[he] was … in a state of diminished capacity that rendered him incapable of entertaining either malice or intent to kill."  To the extent that appellant is challenging his pleas that were entered pursuant to the negotiated disposition, he cannot raise these issues in a section 1172.6 petition.  (*People v. Farfan*, *supra*, 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

## E.  Remand is Not Required

As previously noted, the Supreme Court recently held in *Patton* that the trial court may rely on the preliminary hearing transcript as part of the record of conviction to make the prima facie determination.  *Patton* concluded the trial court in that case properly found the defendant's petition failed to state a prima facie case because he "offered only conclusory allegations of entitlement to resentencing relief under section 1172.6," his petition only contained a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing. (*Patton, supra*, 17 Cal.5th at p. 569.)  *Patton* further held that "out of an abundance of caution," it would remand the matter to allow the defendant to plead "additional facts" in support of an amended petition to establish a prima facie case.  (*Ibid*.)

In contrast to the situation in *Patton*, remand is not required in this case because the trial court did not rely on a preliminary hearing transcript, and appellant already had

numerous opportunities to raise additional facts to support his petition's allegations in light of the record of conviction that established he was the actual driver and ineligible for resentencing.

Appellant filed his petition for resentencing in propria persona, and by checking the boxes in the preprinted declaration. He also filed, in propria persona, a supporting document entitled "Points of Law," that specifically addressed the charges filed against him and his pleas, and raised specific arguments claiming he was convicted based on the imputed malice theories of the felony-murder rule and natural and probable consequences doctrine. In making these arguments, appellant stated "[he] *committed a homicide* during the perpetration of … Vehicle Code Sections 23153[, former subdivision] (e) and 2800.2[, subdivision] (a), a felony inherently dangerous to human life." (Italics added.) Appellant further asserted he "did not commit the crime with actual malice," he "did not harbor the required mental state for a murder conviction," and he pleaded guilty to count 4, gross vehicular manslaughter while intoxicated, and admitted that at the "same time [he] killed" Villegas, that he did "kill … Duncan … *while driving a vehicle* in violation of Vehicle Code Section[s] 23152 and 23153 .…" (Underscoring in original, italics added.) In making these arguments, appellant declared he was driving a vehicle that caused a collision that resulted in two deaths and serious injuries to the third victim.[9]

In response to the People's opposition to his section 1172.6 petition, appellant's appointed counsel filed a reply that simply stated appellant made a prima facie case because he did not stipulate to a specific factual basis when he entered pleas.

At the section 1172.6 hearing, the trial court stated that based on the nature of the charges in the amended information and his pleas, appellant only could have been

---

[9]     As previously noted, appellant's "Points of Law" also quoted from an apparent law enforcement report about the circumstances of a vehicle collision. The trial court properly did not rely on these hearsay documents when it made the prima facie finding, and we similarly decline to consider these documents as part of the record of conviction.

31.

prosecuted for "being the actual killer, in which case implied malice would become the theory" under *Watson*, "which is still valid for driving under the influence, and then that causing death, which appears to me to be how the case was prosecuted."

The trial court asked appellant's counsel if she could identify a target felony that would have allowed the prosecution to proceed against appellant pursuant to the felony-murder rule or the natural and probable consequences doctrine. In response, counsel replied that she could not identify any such theories and she "[did] not disagree with the Court's interpretation" of the case, thus conceding appellant pleaded guilty to murder based on *Watson*'s theory of implied malice.

Finally, in his letter brief filed with this court in propria persona, in response to the *Wende* notice, appellant asserted he did not act with malice or intent to kill, but admitted he was "under the influence in a high speed chase," he had a "car accident" that resulted in the deaths of Villegas and Duncan and severe injuries to Marshall, he apologized for "being the reason for such tragedy," and stated: "I did not intend to harm anyone ever. I regret ever *getting behind the wheel* while under the influence & *for not pulling over*. I take full responsibility for what I did." (Italics added.)

In contrast to *Patton*, appellant's counsel filed a reply to the People's opposition, appeared at the section 1172.6 hearing, but conceded she could not identify any imputed malice theories that would have applied to the murder charge. As explained above, counsel's concession was appropriate in light of the record of conviction.[10] The concessions made by appellant's counsel at that hearing, along with appellant's arguments in his "Points of Law" and letter brief on appeal, undermine any possibility that on remand he could raise further allegations to make a prima facie case for resentencing to refute the record of conviction that conclusively establishes he was

---

[10] An attorney is not ineffective for failing to raise meritless objections or motions. (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)

charged and convicted as the actual killer and ineligible for resentencing as a matter of law.

## DISPOSITION

The trial court's order of November 7, 2023, denying appellant's section 1172.6 petition for resentencing, is affirmed.